UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 08-96-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| TRAVIS C. PHILLIPS, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court upon Magistrate Judge Wier's Recommended Disposition of the Motion to Suppress filed by Defendant Travis C. Phillips. [R. 35.] Therein, Judge Wier recommends that the Court deny the Motion to Suppress [R. 42] filed by the Defendant, Travis C. Phillips ("Phillips"). Both Phillips and the United States filed objections to the Recommended Disposition. [R. 39, 45.] Phillips also filed a response to the United States' objections. [R. 47.] The Court has conducted a *de novo* review. For the reasons set forth below, Phillips's Motion to Suppress [R. 20] will be granted, in part, and denied, in part.

**I.**

On July 2, 2008, Jeffrey Thiemig, an inmate at United States Penitentiary - McCreary, was badly beaten by two other inmates in a corridor outside the prison dining area. According to the Government, Defendant Phillips and his co-Defendant Chad Robert Hughes are the other inmates responsible for that assault. A federal grand jury agreed and returned an indictment charging Phillips and Hughes with violating 18 U.S.C. § 113(a)(6) and 18 U.S.C. § 2. The

current suppression motion concerns the events immediately following the assault.[1]

USP Lt. Tom Long and other corrections officers responded to the scene of the assault after hearing a radio transmission.  As one of the first officers on the scene, Long actually witnessed the assault and ordered Defendants to stop and get down, an order with which Phillips and Hughes complied.  In accordance with standard operating procedure, responding officers placed Defendants in restraints while Long took control of the victim.  After the officers cleared the area of other inmates, they escorted Defendants to the nearby lieutenant's office.

After ensuring that the victim received appropriate medical attention, Long, again in accordance with standard procedure, went to the office to speak with Phillips and Hughes. Without providing *Miranda* warnings, Long proceeded to inquire as to the purpose or motivation behind the assault and any group (gang) affiliation of Phillips.  While Hughes provided Long some information regarding motivation for the assault, Phillips refused to say anything beyond a denial both of his involvement and of any gang affiliation.  According to Long, the sole purpose of this inquiry was to determine whether the assault was an isolated incident.

Soon after, officers transferred Defendants to the Special Housing Unit ("SHU"), placing them in temporary holding cells to await permanent placement in the SHU, or the "jail within the jail."  During this time, SIS (Special Investigative Services or Section) Technician Wilfredo Rivera, who also had responded to the alarm and photographed the scene, spoke with Phillips at the SHU.  Another officer escorted Defendant Phillips, rear-restrained per standard operating procedures, to a counselor's office to meet one-on-one with Rivera.  Without first providing

---

[1]The basic facts of this case are not in dispute.  Neither party objects to or offers a materially different version of the facts set out by Judge Wier.  The Court will therefore adopt and incorporate the factual background set forth in the Recommended Disposition.

*Miranda* warnings, Rivera identified himself and asked Phillips questions regarding the reasons for and scale of the assault. During this five to fifteen minute interview, Phillips told Rivera that he and Hughes acted alone pursuant to a personal issue. Defendant Phillips also reiterated that he was not affiliated with a gang.

By the next morning, July 3, 2008, the prison had formally transferred Phillips from the general population to the SHU. After reviewing the case file, Lt. Shawn Burchett of the SIS spoke with Defendant in the lieutenant's office in the SHU. In accordance with SHU policy, Phillips wore restraints while out of his cell. At no point did Burchett provide *Miranda* warnings. During the brief interview, Burchett probed the reasons for and any history or third-party involvement in the fight, and Phillips again indicated that the fight was personal and that he was not affiliated with any gang or group. According to Burchett, the purpose of the interview was to determine if the assault was related to recent inmate seating disputes in the dining facility or was an attempt by Defendants to gain entry into a white gang.

Finally, in addition to being interviewed by the three USP McCreary officers, Defendant Phillips also spoke to Special Agent James Walsh of the Federal Bureau of Investigation. Walsh made a routine FBI visit to USP McCreary on July 9, 2008. Due to "prison intel" that suggested a possibility that the July 2 assault was linked to larger issues of gang membership or prison population unrest, Walsh elected to interview Defendants and the victim. In the presence of fellow FBI SA Cory King, Walsh questioned Defendant Phillips, who was restrained, in an office in the SHU. Before Walsh asked questions, he read Phillips the *Miranda* rights. Phillips waived, and, per Walsh's request, provided a narrative accounting of the July 2 assault. During this interview, Walsh knew of and generically referred to Phillips's prior statements to USP

3

personnel.

Following a lengthy evidentiary hearing, Judge Wier issued his Recommended Disposition, recommending that the suppression motion be granted in part and denied in part. Judge Wier concluded that Phillips's statements to the three USP personnel should be suppressed but that his later statements to SA Walsh are properly admissible. Both Phillips and the United States objected to portions of Judge Wier's Recommended Disposition. In its objections, the Government contended that the public safety exception in *Quarles* permitted the use of Phillips's non-*Mirandized* statements to the USP officers. *See New York v. Quarles*, 467 U.S. 649 (1984). Because the United States later withdrew its objections [*see* R. 112], however, the Court has only reviewed that portion of the Recommended Disposition for clear error and found none. Thus, the sole remaining issue, and the focus of the Defendant's objection, is whether Phillips's statements to SA Walsh should also be suppressed. Because Phillips's statements to SA Walsh were voluntary and occurred after the *Miranda* warnings were given, they are admissible.

## II.

The applicability of *Miranda* to this case is not disputed. Judge Wier concluded that all four instances of questioning were custodial in nature, and the Government conceded as much. Because the United States withdrew its objections based on the public safety exception to *Miranda*, the parties are now in agreement that Phillips should have received *Miranda* warnings prior to each round of interrogation. The parties further agree that SA Walsh was the only official who advised Phillips of his *Miranda* rights prior to questioning him.

Where a defendant, like Phillips, makes two statements, one before receiving the *Miranda* warnings and the other following proper *Miranda* warnings, the appropriate standard

4

for reviewing the later statements is subject to some debate.  The Supreme Court first addressed this issue in *Oregon v. Elstad*, 470 U.S. 298 (1985).  In *Elstad*, police went to the home of a burglary suspect and briefly questioned him without first advising him of his *Miranda* rights.  The defendant admitted being present at the burglary, at which point the officers arrested him and took him to the police station.  About an hour later, the officers informed the defendant of his *Miranda* rights, and he then made a full confession.  The Court held that "[t]hough *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."  *Id.* at 309.  In other words, "absent coercion or improper tactics in obtaining the initial statement," a post-*Miranda* statement would not be automatically excluded because of an earlier, pre-*Miranda* confession.  *Id.* at 314.  Thus, where no coercion is found, a careful and thorough administration of *Miranda* warnings cures the condition that rendered the unwarned statement inadmissible.  *Id.* at 311-12.

The Supreme Court addressed this issue again in *Missouri v. Seibert*, 542 U.S. 600 (2004).  Unlike *Elstad*, where the officer's initial failure to warn was an oversight, the police in *Seibert* "used a two-step questioning technique based on a deliberate violation of *Miranda*."  *Id.* at 620 (Kennedy, J., concurring in the judgment).  The interrogating officer began questioning Seibert without providing the *Miranda* warnings.  *Id.* at 604.  After the suspect confessed, the officer gave the warnings and resumed questioning to lead the suspect back over the same ground.  *Id.*

Although the Court held that statements obtained through such a two-step technique are inadmissible, none of the opinions in *Seibert* received the votes of five Justices.  The plurality

opinion, which was joined by four of the Justices, held that "[t]he threshold issue when interrogators question first and warn later is . . . whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires."  *Id.* at 611-12.  The plurality set forth five "relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective":

> (1) the completeness and detail of the questions and answers in the first round of interrogation, (2) the overlapping content of the two statements, (3) the timing and setting of the first and the second rounds, (4) the continuity of police personnel, and (5) the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id.* at 615.  These factors, all of which concern the relationship between the first and second interrogations, are intended to aid courts in determining whether an initial, unwarned interrogation operated to "thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted."  *Id.* at 617.

Justice Kennedy, supplying the fifth vote to exclude the confession at issue, stated that courts should employ the plurality's effectiveness factors only in cases where the police deliberately used a two-step question-first technique to evade *Miranda*.  *Id.* at 622. However, if the failure to give *Miranda* warnings was inadvertent, rather than intentional, Justice Kennedy indicated that "[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad*."  *Id.*

To be sure, there is some confusion about whether the plurality opinion or Justice Kennedy's concurrence in *Seibert* controls.  *See, e.g.*, *United States v. Pacheco-Lopez*, 531 F.3d 420, 427 n.11 (2006).  Generally, where there is no majority opinion, the narrowest opinion adhered to by at least five Justices controls.  *See Marks v. United States*, 430 U.S. 188, 193

(1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).  But, the proper application of the *Marks* rule to *Seibert* is no simple task.  As noted by Judge Berzon in his dissent in *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1138-41 (9th Cir. 2005), "three of the four Justices in the plurality *and* the four dissenters decisively rejected any subjective [test] . . . based on the deliberateness on the part of the police."  *Id.* at 1139 (emphasis in original).  *See also United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir. 2006) (describing problem with adopting Justice Kennedy's approach); *but see Pacheco-Lopez*, 531 F.3d at 427 n.11 ("Most circuits have assumed that Justice Kennedy's concurrence operates as the controlling precedent[.]").  Despite these competing theories, this Court does not have to resolve that issue here because Phillips's statements to SA Walsh are admissible under either standard.

In this case, the Court shares Judge Wier's concern about the confusion surrounding the proper use of *Miranda* warnings at USP McCreary.  The testimony from several different officers revealed fundamental misconceptions about the applicability of *Miranda*.  While the apparently seldom use of *Miranda* warnings at USP McCreary is troubling, the Court agrees with Judge Wier's assessment that the failure to adhere to *Miranda* stems from misunderstandings about its applicability rather than a deliberate attempt to evade its requirements.  The Court does not find that USP McCreary employed an improper question-first tactic similar to the one in *Seibert*.  Thus, according to Justice Kennedy's concurrence, *Elstad* would apply in the absence of such a deliberate strategy.

Phillips's statements to SA Walsh are admissible under *Elstad*.  Absent coercion, Phillips's post-warning statements are admissible if SA Walsh properly complied with *Miranda*. SA Walsh testified that he interviewed Phillips a week after the incident and six days after the

most recent questioning by USP McCreary personnel.  SA Walsh further stated that he provided

detailed *Miranda* warnings and that Phillips willingly provided a statement.  Although defense

counsel questioned whether SA Walsh actually provided the *Miranda* warnings, the only

evidence of record establishes that SA Walsh gave a "careful and thorough administration of

*Miranda* warnings."  *See Elstad*, 470 U.S. at 311-12.  Because Phillips made a knowing and

voluntary waiver following those warnings, his post-*Miranda* statements to SA Walsh are

admissible.

In his Recommended Disposition, Judge Wier specifically noted that Phillips did not

argue, at any point, that his statements to the USP officers were coerced.  It appears from his

objections that Phillips is now contesting the voluntariness of his prior unwarned statements.  If

the prior statements were indeed coerced, the court must determine whether any coercion

"carried over into the second confession."  *Id.* at 310 (internal citation omitted).  The appropriate

inquiry under such circumstances focuses on the voluntariness of the post-*Miranda* statements

by considering the following factors: (1) passage of time between the first and second

confessions; (2) change in location of interrogation; and (3) change in interrogator identity.  *See*

*id.*; *see also Seibert*, 542 U.S. at 605 (O'Connor, J., dissenting) ("*Elstad* commands that if [the

defendant's] first statement is shown to have been involuntary, the court must examine whether

the taint dissipated through the passing of time or a change in circumstances.").

Considering these factors, Phillips's statement to SA Walsh was voluntary and would be

admissible even if any of his earlier unwarned statements had been coerced.[2]  The Walsh

---

[2]The record does not support Phillips's contention that his statements to the USP officers
were coerced.  When considering whether a statement is voluntary, courts look to the "totality of
the circumstances" to determine "whether a defendant's will was overborne in a particular case."

interview occurred six days after Burchett's interview.  Further, SA Walsh immediately

identified himself to Phillips and provided full *Miranda* warnings prior to asking any questions.

Phillips made a knowing and voluntary waiver before providing a statement.  While this

interview also took place in one of the offices in the SHU, the significant passage of time and the

change in the identity of the interrogator weigh heavily in favor of finding Phillips's statements

voluntary.  The record simply does not support the notion that Phillips's will was overborne.

Thus, even if Phillips's prior unwarned statements were involuntary, any potential taint

dissipated through the passing of time and a change in circumstances.  His statements to SA

Walsh are, therefore, admissible.

       To the extent that Justice Kennedy's concurrence in *Seibert* is not the controlling

opinion, Phillips's statements are also admissible under the plurality's effectiveness analysis.  As

noted previously, that framework requires the court to consider the following five factors: (1)

completeness and detail of the initial interrogation; (2) overlap between the two statements; (3)

timing and setting of the two interrogations; (4) continuity of interrogating personnel; and (5)

degree to which the two interrogations were continuous.  *See id.* at 615.

       Here, the first three interviews with the USP McCreary officers were brief and relatively

cursory.  All three officers testified that they were trying to ascertain the motivation for the

---

*United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007) (internal quotation and citation omitted).
Relevant factors include the defendant's age, his level of education and intelligence, whether he
was advised of his rights, whether he suffered physical punishment, and the length of the
questioning he endured.  *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)
(citation omitted)).  Here, Phillips did not suffer physical punishment and although there were
separate rounds of questioning, each round was relatively brief.  Phillips also easily resisted
providing much, if any, information, during Lt. Long's interview which, as Judge Wier noted,
was potentially the most coercive.  Nonetheless, for the limited purpose of this analysis, the
Court presumes that Phillips's unwarned statements were coerced.

assault and whether it was gang-related.  The interview with SA Walsh was quite different.

Although some of the same topics were covered, it was a longer and much more detailed

interview in which Walsh gave Phillips an opportunity to provide his version of the events.

Regarding the timing and setting, Walsh interviewed Phillips six days after his previous

interview with Lt. Burchett.  Although the interview was conducted in a similar location, none of

the previous interrogators actually participated in SA Walsh's interview.  Finally, SA Walsh's

questions did not treat his interview as continuous with the others.  Unlike the prior interviews,

SA Walsh encouraged Phillips to tell his side of the story.  Although SA Walsh alluded to the

fact that Phillips had made prior statements, he did not challenge him with the actual content of

those statements.  According to SA Walsh, Phillips appeared calm, confident, and not

intimidated.  Thus, Phillips's statements about the incident, which were different from his prior

statements and which SA Walsh viewed as being rehearsed, were voluntary.

In sum, because the questioning was broken up into two distinct sessions, almost a week

apart, and conducted by different personnel, the *Miranda* warnings provided by SA Walsh were

much more likely to have had their intended effect.  Like in *Elstad*, it is not unreasonable to see

the questioning by SA Walsh as "presenting a markedly different experience . . . [where] the

*Miranda* warnings could have made sense as presenting a genuine choice whether to follow up

on the earlier admission."  *Seibert*, 542 U.S. at 615.  Accordingly, SA Walsh's *Miranda*

warnings were effective and produced a valid waiver and voluntary statement from Phillips.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as

follows:

(1)      Defendant's Objections to the Magistrate's Report and Recommendation [R. 39] are **OVERRULED**;

(2)      The Magistrate Judge's Report and Recommendation [R. 35] is **ADOPTED** and **INCORPORATED** herein; and

(3)      Defendant's Motion to Suppress [R. 20] is **DENIED**.

This the 1st day of December, 2009.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge

11